**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY GERVASIO, RICHARD BONGIOVANNI, MICHAEL DINSE, JAMES CLOUD, and CHRISTOPHER CARMANY, Individually and on Behalf of All Other Persons Similarly Situated<br><br>*Plaintiffs*,<br><br>v.<br><br>WAWA INC.,<br><br>*Defendant.* | Civil Action No.: 17-cv-245 (PGS)<br><br>**MEMORANDUM AND ORDER** |

SHERIDAN, U.S.D.J.

This matter is before the Court on Plaintiffs Anthony Gervasio, Michael Dinse, James Cloud, and Christopher Carmany's (collectively, "Plaintiffs") Motion to Conditionally Certify a Collective Action under Section 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) (ECF No. 37), based on allegations that Defendant Wawa misclassified Plaintiffs and other assistant general managers (hereinafter, "AGM") as "exempt" under the FLSA and failed to pay them overtime for hours worked in excess of 40 hours per week.

## BACKGROUND

On April 21, 2017, named plaintiffs filed their amended complaint, alleging they were "mislabeled" under the FLSA as managers when their duties reflected those of an hourly employee, and, therefore, are entitled to unpaid overtime wages. (Amended Compl. at ¶ 1). On December 28, 2015, Wawa re-classified AGMs as non-exempt employees under the FLSA; however, Plaintiffs now seek to recover backpay for unpaid overtime hours worked prior to the

reclassification.  Plaintiffs were all AGMs at Wawa, which operates a chain of more than 720 convenience stores in New Jersey, Pennsylvania, Maryland, Delaware, Virginia and Florida. (*Id.* at ¶ 22).  Gervasio, a New Jersey resident, was employed by Wawa as an AGM from September 2006 to April 2016 at the Bensalem, Levittown, Yardley, and Fairless Hills, Pennsylvania locations. (*Id.* at ¶ 10).  Dinse, a New Jersey resident, worked for Wawa from August 2009 to May 2014 as an AGM at Wawa's Tinton Falls, Wall Township, Farmingdale, and Shasta, New Jersey locations. (*Id.* at ¶ 14).  Cloud, a Maryland resident, was in Wawa's employ, as an AGM, from November 2011 to March 2014 at their Glen Burnie, Annapolis, and Gambrills, Maryland locations. (*Id.* at ¶ 16).  Finally, Carmany, a New Jersey resident, worked as an AGM for Wawa from December 2015 to March 2017 at their Galloway Township, Ventnor Heights, Northfield, and Absecon, New Jersey locations. (*Id.* at ¶ 18).  Gervasio, Dinse, and Carmany all claim to have worked between 50 and 55 hours a week, during weeks when they worked five or more shifts, but did not receive payment for the hours worked in excess of 40. (*Id* at. ¶¶ 50-51, 54).  Similarly, Cloud claims to have worked between 55 and 60 hours a week, when he worked five or more shifts, and he did not receive payment for the hours worked beyond 40. (*Id.* at ¶ 53).

Plaintiffs allege that they, and similarly situated employees, did not receive "overtime wages for hours worked above 40 in a workweek." (*Id.* at ¶ 1).  According to the Amended Complaint, the work performed "did not include managerial responsibilities" and did not require "the exercise of meaningful independent judgment and discretion concerning matters of significance." (*Id.* at ¶¶ 58-59).  Their primary job duties include: "working the cash registers, making deli sandwiches, stocking shelves, cleaning the store, assisting customers, unpacking merchandise, and other manual tasks." (*Id.* at ¶ 61).  Plaintiffs assert that their jobs did not include: "hiring, firing, disciplining, or directing the work of other employees, and exercising meaningful

independent judgment and discretion," as a manager would. (*Id.* at ¶ 62).  According to the Amended Complaint, Wawa's decision to classify all AGMs as exempt was part of a "centralized, company-wide policy, pattern and/or practice." (*Id.* at ¶ 66).

Plaintiffs also present a Wawa AGM Job Description, which generally describes the duties and responsibilities of AGMs. (ECF No. 46-12, "Job Description").  The Job Description categorizes an AGM's duties into "Principal Duties," "Essential Duties," and "Other Job Duties." (*Id.*).  Under "Essential Duties," Wawa identifies two key duties of AGMs: (1) Management and (2) Cash Register. (*Id.* at 1-2).  Under Management, AGMs serve a general supervisory role, overseeing the overall operation of the store. (*Id.* at 1).  As "Other Job Duties," AGMs are expected to: (1) handle the coffee area; (2) work the oven station; (3) and handle food service. (*Id.* at 2-4). Notably, the Job Description states that the position is "based on a 46.75 average hours work week." (*Id.* at 5).

At deposition, Plaintiffs asserted that they spent the majority of their days performing non-managerial work.  Gervasio claimed that he spent 60 percent of his time working as a cashier, 30 in the deli, and the remaining 10 in the facilities area. (ECF. No. 44-2, "Gervasio Dep. Tr." at 368-69).  Similarly, Carmany explained that he did not serve a supervisory role as AGM, although he occasionally checked payroll, per his general manager's request. (ECF No. 44-5, "Carmany Dep. Tr." at 129-34).  However, when asked to breakdown how he spent his shifts, Carmany explained he spent 90-95 percent of his time cleaning, stocking, mopping, and handling the register. (*Id.* at 135-37).  Similarly, Cloud denied performing any of the "Management-Essential Duties" and testified that 90 percent of his work involved working the cash register or performing "other job duties." (ECF No. 44-4, "Cloud Dep. Tr." at 167-68).  Lastly, Dinse testified that his daily responsibilities as AGM entailed working as a cashier, cleaning, checking bathrooms, and stocking

the cooler and coffee areas. (ECF No. 44-3, "Dinse Dep. Tr." at 243-45).  He explained that the bulk of his work involved serving as a cashier or stocking the cooler. (*Id.* at 244).

Wawa's Rule 30(b)(6) witnesses also discussed the commonality of AGM duties throughout the nation.  At deposition, Rebecca Altemus, a Wawa area manager, explained that the AGM Job Description would have been the same nationwide, regardless of size or region. (ECF. No. 46-10, "Altemus Dep. Tr." at 50).  She also testified that Wawa has an employee handbook, which sets forth various policies and procedures, that employees, including AGMs, are expected to follow. (*Id.* at 53, 66, 117).  Regardless of whether hired as an AGM or promoted to one, Wawa expects AGMs to have completed "brand fundamental" training, which included register training, sandwich making training, and shelve stock training. (*Id.* at 130-32).  Similarly, Melanie Hoffman, a Wawa Compensation and Retirement Plans Manager, testified at deposition about how AGMs were paid. (ECF. 46-9, "Hoffman Dep. Tr.").  Hoffman explained that on December 28, 2015, Wawa re-classified AGMs as non-exempt employees. (*Id.* at 19-20).  However, prior to the re-classification, all AGMs, regardless of the state, region, or size of the store, were exempt employees under the FLSA and paid on salary. (*Id.* at 20-23, 34).

Plaintiffs allege Wawa's failure to pay overtime is in violation of the FLSA, 29 U.S.C. § 201 *et seq.*, as well as state-law provisions under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. §§ 34:11-56a to -56a38; Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat. § 333.104(c); Maryland Wage and Hour Law ("MWHL"), Md. Code Ann. Lab. & Empl. §§ 3-401 to -428; and Maryland Wage Payment and Collection law ("MWPCL"), Md. Code Ann. Lab. & Empl. §§ 3-501 to -509.  Plaintiffs seek to bring this action on behalf of themselves and similarly situated employees in New Jersey, Pennsylvania, and Maryland.

## LEGAL STANDARD

The FLSA "was designed 'to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds*, *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66 (2013) (*Symczyk II*).   Unless exempt as a *bona fide* executive, "[t]he FLSA requires employers to pay overtime compensation for an employee's work that is in excess of forty hours per week." *Essex v. Children's Place, Inc.*, No. 15-5621, 2016 U.S. Dist. LEXIS 108853, at *9 (D.N.J. Aug. 16, 2016).   In order to fall within the "executive exemption," an employee must meet the following criteria: "(1) the employee receive compensation on a salary basis, (2) [his or] her primary duty is management of a recognized department, (3) [he or] she customarily and regularly directs the work of two or more employees, and (4) [he or] she has authority to hire or fire employees." *Id.* at *9-10 (citing 29 C.F.R. § 541.100).   "An employee's primary duty is 'the principal, main, major or most important duty that the employee performs.'" *Id.* at *10 (citing 29 C.F.R. § 541.700).

"Under Section 16(b) of the FLSA, an employee may bring an action against his employer individually, on his own behalf, and collectively, on behalf of other 'similarly situated' employees." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242 (3d Cir. 2013); 29 U.S.C. § 216(b).   Although not defined in the FLSA, "similarly situated" has been understood to mean "that a plaintiff must 'produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.'" *Essex*, 2016 U.S. Dist. LEXIS 108853, at *12 (quoting *Symczyk*, 656 F.3d at 193).   However, unlike class actions under Federal Rule of Civil Procedure 23, the FLSA requires

employees to actively "opt-in" to an FLSA collective action suit. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").

The Third Circuit follows "a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi*, 729 F.3d at 243 (citing *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir. 2012)). At step one, the court must make a "preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Id.* "If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Id.* "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Symcyzk II*, 569 U.S. at 75 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989)).

At step two, "with the benefit of discovery, 'a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" *Camesi*, 729 F.3d at 243 (quoting *Symcyzk*, 656 F.3d at 193). At this step, courts employ a "stricter standard," which requires the court to "consider[] all the relevant factors and make[] a factual determination on a case-by-case basis." *Zavala*, 691 F.3d at 536. "While case specific, the relevant factors may include whether employees have the same job description, are subject to the same compensation plan, received the same training, or whether they advance similar claims and seek substantially the same form of relief." *Essex*, 2016 U.S. Dist. LEXIS 108853, at *15. "This step may be triggered by the plaintiffs'

6

motion for 'final certification,' by the defendants' motion for 'decertification,' or, commonly, by both.  If the plaintiffs succeed in carrying their heavier burden at this stage, the case may proceed on the merits as a collective action." *Camesi*, 729 F.3d at 243.

**ANALYSIS**

I. Conditional Certification Analysis

The court's decision in *Essex* is particularly instructive for purposes of the present matter. *Essex*, 2016 U.S. Dist. LEXIS 108853, at *18.  *Essex* involved the conditional collective action certification of store managers at the Children's Place. *Id.* at *1-2.  Like the present matter, the named plaintiffs alleged that they worked in excess of 40 hours per week and, despite their job title, performed largely non-managerial tasks. *Id.* at *2.   Therefore, the plaintiffs claimed they were misclassified as exempt under the FLSA and were entitled to unpaid overtime wages. *Id.*  The court ultimately concluded that since the evidence demonstrated that the plaintiffs were "from seven different states[,] performed similar non-managerial duties for a majority of the time they spent working, worked more than forty hours per week, and did not receive overtime compensation," they met their modest factual burden. *Id.* at *22.

Here, the Court is satisfied that Plaintiffs have made "'a modest factual showing of a factual nexus' between Defendant's alleged misclassification of their status as exempt and the manner in which it affected others." *Id.* at *18.  Plaintiffs have demonstrated that AGMs are subject to the same Job Descriptions nationwide, and that Wawa expects all AGMs to uniformly follow the guidelines and policies set forth in their handbooks and training material.  With regards to the Job Description, Wawa not only directs AGMs how to perform what they describe as managerial tasks, but also sets forth a laundry list of other non-managerial duties that AGMs are expected to do. However, despite the Job Description identifying "Management" as an "Essential Job Dut[y],"

7

Plaintiffs have unequivocally denied performing any "managerial tasks." All four plaintiffs claim that the majority of their responsibilities entailed non-managerial tasks such as handling the cash registers, re-stocking shelves and coolers, and cleaning various areas of the store. Moreover, despite performing largely non-managerial tasks and working more than forty hours, all four plaintiffs have not been paid overtime. In short, like *Essex*, Plaintiffs have demonstrated that AGMs from three different states have performed these non-exempt tasks, while working more than forty hours per week, and not receiving overtime compensation. As such, the court is satisfied that these facts suffice for the Court to find that Plaintiffs have met their lenient burden, under the first step, of conditionally certifying a collective action. *See Camesi*, 729 F.3d at 243.

The Court is also unpersuaded by Defendant's attempt to draw distinctions from each individual Plaintiff, in an attempt to demonstrate that Plaintiffs are not all "similarly situated." First, at this stage, the Court finds consideration of the individual differences to be premature, as "this inquiry necessarily addresses the merits of Plaintiff's claim." *See Goodman v. Burlington Coat Factory*, No. 11-4395, 2012 U.S. Dist. LEXIS 166910, at *26 (D.N.J. Nov. 20, 2012) (refusing to consider evidence that shows differences among the plaintiffs, including their work place behavior and poor performance records, since this addresses the merits of the plaintiff's claims, which is better suited at the second stage). Second, to the extent that distinctions can be drawn from each individual Plaintiff, the record nevertheless demonstrates that all Plaintiffs still worked over 40 hours a week, performed largely non-exempt duties, and were not paid overtime. *See, e.g.*, *Ruffin v. Avis Budget Car Rental, LLC*, No. 11-1069, 2012 U.S. Dist. LEXIS 89651, at *11 (D.N.J. June 28, 2012) ("At this stage, Plaintiffs are required only to demonstrate that they are '*similarly* situated, not identically situated.'" (citation omitted)).

In short, the Court finds that Plaintiffs met their modest burden of demonstrating that their proposed collective action is similarly situated.   As such, Plaintiffs' Motion for Conditional Certification is granted.

II. Class Notice

"Upon conditional certification of a FLSA collective action, a court has discretion to provide court-facilitated notice to potentially eligible members of the collective action." *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 573 (D.N.J. 2014).  "Such notice ensures that employees receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Id.* (quoting *Hoffman-La Roche Inc.*, 493 U.S. at 170).

Here, Plaintiffs request the Court approve their form of notice and order Wawa to produce a list of all AGMs that have been employed by Wawa within three years of the Court's order. Specifically, Plaintiffs seek:

> A list, in electronic format, of all persons employed by Wawa as AGMs from [three years prior to the date of the Court's order], to the present including: names, addresses, telephone numbers, dates of employment, locations of employment, social security numbers, and work and personal e-mail addresses

(Pls' Brief in Support at 22).  In their proposed form of notice, Plaintiffs provide a brief description of the lawsuit, an explanation the proposed class's members rights and the implications of joining the class, a statement that Wawa is prohibited from retaliating against them from joining the class, and a consent form for employees to opt into the collective action. (ECF No. 46-21, "Notice Form").  As such, the Court will grant Plaintiffs' request for a list of all AGMs employed by Wawa within the last three years.  Wawa shall provide Plaintiffs with a list of all AGMs, the dates and locations of employment, their last known address, and their last known phone number and email address.

However, the major point of contention between the parties is the scope of the notice period.  Plaintiffs seek for the notice period to date back three years from the filing of their Complaint, January 12, 2017; as such, the notice period would cover AGMs employed by Wawa from January 12, 2014 to December 28, 2015, when Wawa reclassified its employees.  Wawa contends that notice period should date back three years from the date of this Court's order and be limited to the locations where the named Plaintiffs worked.

Under the FLSA, a collective action for non-named plaintiffs commences when he or she files a written consent, not when the complaint was filed. *See* 29 U.S.C. § 256(b).  As such, the Court limits the scope of notice to all AGMs who are or were employed by Wawa dating three years back from this Court's order.[1] *See Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 82 (D.N.J. 2014) (limiting the notice period to three years prior to the agreed notice date, not the filing of the complaint).  Additionally, the Court sees no basis to limit the conditional certification to the stores where named Plaintiffs worked.  As discussed above, the Court is satisfied that, at this juncture, Plaintiffs have demonstrated that the facts alleged are representative of the proposed collective class; as such, there is no basis to limit the scope to only locations where named Plaintiffs worked. In sum, the Court defines the class as: All individuals who are or were employed by Wawa as an AGM in any of its locations dating three years back from this Court's order.

It is also worth briefly noting that the Court sees no basis for granting Plaintiff's request that that the statute of limitations for the putative collective action members be equitably tolled. (ECF No. 23).   "[T]olling is appropriate if: (1) the defendant has actively misled the plaintiff; (2)

---

[1] Because the Amended Complaint alleges willful violations of the FLSA, the Court finds that three years prior to this order is the appropriate start date for the collective action. *See* 29 U.S.C. § 255(a) (stating that a "willful violation" of the FLSA "may be commenced within three years after the cause of action accrued").

the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Adami*, 299 F.R.D. at 82 (citing *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845 (3d Cir. 1992)). "The remedy of equitable tolling is extraordinary, and we extend it 'only sparingly.'" *Santos v. United States*, 558 F.3d 189, 197 (3d Cir. 2009).

Here, the Court sees no basis for finding equitable tolling applicable. The crux of Plaintiffs' argument is that because Wawa made a unilateral decision to reclassify AGMs, potential opt-in class members were unaware of the collective action or the opportunity to opt in. However, that is not an extraordinary circumstance warranting equitable tolling. *See Titchenell v. Apria Healthcare, Inc.*, No. 11-563, 2012 U.S. Dist. LEXIS 122759, at *22 (E.D. Pa. Aug. 29, 2012) (finding unpersuasive the plaintiff's argument that "the proposed additional class members having neither 'timely knowledge of the existence of this collective action' nor 'an opportunity to file a written opt in form.'"). Moreover, nothing in the record suggests that Wawa intimidated or threatened its employees, in an attempt to prevent potential plaintiffs from joining the collective action. Finally, Plaintiff's contention that Wawa misled Plaintiffs by misclassifying AGMs as exempt is unavailing. An employer "actively misle[ads] the plaintiff" when his or her "own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his [or her] rights." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (quoting *Meyer v. Riegel Prods Corp.*, 720 F.2d 303, 307 (3d Cir. 1983)). On this record, there is nothing to suggest that Wawa has engaged in any deceptive conduct for which this court could reasonably conclude that Plaintiffs' rights were interfered with. In sum, "the circumstances of this case are not substantially different from other FLSA cases," as such, the Court sees no reason to grant

Plaintiffs' request that the statute of limitations be equitably tolled. *See Tidd v. Adecco USA, Inc.*, No. 07-11214, 2008 U.S. Dist. LEXIS 69825, at *17 (D. Mass. Sept. 17, 2008).

**ORDER**

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 10th day of January, 2018,

**ORDERED** that Plaintiffs' Motion to Conditionally Certify Collective Action and to Approve and Facilitate Notice to Similarly Situated Employees (ECF No. 37) is **GRANTED** and this collective action is conditionally certified Pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act as a collective of all former Assistant General Managers ("AGMs") employed by Defendant, Wawa, Inc., nationwide at any time from January 10, 2015 through December 28, 2015 (the "Collective"); and it is further

**ORDERED** that within 10 days of the entry of this order, Defendant will provide to Plaintiffs a list, in electronic format, of all persons employed by Wawa as AGMs nationwide including: names, addresses, telephone numbers, dates of employment, locations of employment, and work and personal e-mail addresses; and it is further

**ORDERED** that the form of the Notice and Consent to Join Form shall be the Notice attached as Exhibit U to Plaintiffs' Motion, so long as the period of time conforms with this Order; and it is further

**ORDERED** that Notice and Consent to Join Forms shall be sent to all members of the Collective via First Class U.S. Mail and email; and it is further

**ORDERED** that a Reminder Postcard shall issue via First Class U.S. Mail and email to members of the Collective who, as of half-way through the completion of the notice period, have not submitted a completed Consent to Join Form; and it is further

**ORDERED** that Plaintiffs are authorized to create a website where members of the Collective may review the Notice and electronically submit a Consent to Join Form; and it is further

**ORDERED** that a copy of the Notice shall be posted in a conspicuous location in the "break room" or similar office space where such legal notices are normally posted at each of Defendant's locations in which Collective members are or were employed.

_s/Peter G. Sheridan_
PETER G. SHERIDAN, U.S.D.J.