# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTHONY GERVASIO, MICHAEL DINSE, JAMES CLOUD and CHRISTOPHER CARMANY Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WAWA, INC., <br><br> Defendant. | Case No. 3:17-cv-00245 (PGS)(DEA) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE ACTION SETTLEMENT, FOR AN AWARD OF EXPENSES AND ATTORNEYS' FEES, AND FOR APPROVAL OF ENHANCEMENT AWARDS AND PAYMENT OF SETTLEMENT COSTS**

Marc S. Hepworth
David A. Roth
Charles Gershbaum
Rebecca S. Predovan
HEPWORTH GERSHBAUM & ROTH PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801

*Attorneys for Plaintiffs and Opt-Ins*

Table of Contents

**I. BACKGROUND** ...............................................................................................1

**A. Pertinent Procedural History.** ......................................................................4

**B. The Settlement.** ...............................................................................................8

**II. ARGUMENT** ...............................................................................................9

**A.** ...............**A One-Step Approval Process Is Standard for FLSA Settlements**.
9

    **1. The settlement resolves a bona fide dispute.**...........................................12

    **2. The agreement is "fair and reasonable."** .................................................13

    **3. The Settlement Does Not Frustrate the Implementation of the FLSA.**18

**B. The Service Award Warrants Approval.** ....................................................18

**C. The Request for Attorneys' Fees is Reasonable and Should be Approved.**
21

    **1. The Requested Fee is Reasonable as a Percentage of the Common
Fund (Gunter Factor 1).** ........................................................................................
22

    **2. The Presence or Absence of Substantial Objections by Members of the
Collective (Gunter Factor 2)** .............................................................................23

    **3. The Skill and Efficiency of the Attorneys Involved and the Amount of
Time Devoted to the Case (Gunter Factors 3 and 6)**....................................24

    **4. The Complexity and Duration of the Litigation (Gunter Factor 4)** .......26

    **5. The Risk of Nonpayment (Gunter Factor 5)**.............................................27

    **6. Awards in Similar Cases (Gunter Factor 6)**.............................................27

**III. The Court Should Permit Payment of the Settlement Expenses From the
Settlement Fund.**................................................................................................31

**IV. CONCLUSION** ...............................................................................................32

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alli v. Boston Mkt. Corp.*,
10-cv-0004, Order (D. Conn. Apr. 12,2012).............................................................................. 28

*Aquilino v. Home Depot, U.S.A., Inc.*,
2011 WL 564039 (D.N.J. Feb. 15, 2011)............................................................................... 15, 16

*Beckman* v. *Key Bank, NA.*,
293 F.R.D. (S.D.N.Y. 2013) ............................................................................................. 10, 15, 25

*Bettger v. Crossmark, Inc.*,
2015 WL 279754 (M.D. Pa. Jan. 22, 2015) ............................................................................ 13, 18

*Bozak v. Fedex Ground Package Sys., Inc.*,
No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) .................................................. 11

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745 (D.N.J. April 8, 2011) .............................................................................. 10, 13

*Brown v. TrueBlue, Inc.*,
2013 WL 5408575 (M.D.Pa. Sept. 25, 2013) ........................................................................... 11

*Brumley v. Camin Cargo Control, Inc.*,
2012 WL 1019337 (D.N.J. March 26, 2012) .................................................................. 11, 12, 17

*Capsolas v. Pasta Res. Inc.*,
2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ........................................................ 28

*Careccio* v. *BMW of N. Am. LLC*,
2010 WL 1752347 (D.N.J. Apr. 29, 2010) ............................................................................... 24

*Castagna v. Madison Square Garden, L.P.*,
No. 09-10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ..................................................... 13

*Castillo v. Noodles & Co.*,
No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ............................................. 10

*Clark v. Ecolab Inc.*,
Nos. 07-8623, 04-4488, 06-5672, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ...................... 13

*In re Corel Corp. Inc.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ...................................................................................... 31

i

*Craig v. Rite Aid Corp.*,
2013 WL 84928 (M.D.Pa. Jan. 7, 2013) .......................................................................... 2, 27, 28

*In re Datatec Sys.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007)....................................................................... 26, 31

*Davis v. Essex County*,
2015 WL 7761062 (D.N.J. Dec. 1, 2015) ......................................................................... 12, 13

*Dawson v. Pastrick*,
600 F.2d 70 (7th Cir. 1979).............................................................................................. 14

*deMunecas v. Bold Food, LLC*,
2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ............................................... 29

*deMunecas v. Bold Food*,
LLC, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010)........................................................ 13

*Devlin v. Ferrandino & Son, Inc.*,
2016 WL 7178338 (E.D.Pa. Dec. 9, 2016) ..................................................................... 19

*Dixon v. Zabka*,
No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) ..................................... 11

*Edelen v. Am. Residential Servs.*,
LLC, No. CIV.A. DKC 11-2744, 2013 WL 3816986 (D. Md. July 22, 2013)................ 19

*Flores v. Anjost Corp.*,
2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 29, 2014)................................................ 28

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. *1995*)............................................................................................ 21, 27

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013) .................................................................................................... 9

*Godshall v. Franklin Mint Co.*,
2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) .................................................................... 20

*Guaman* v. *Ajna-Bar NYC"*
2013 U.S. Dist. LEXIS 16206 (S.D.N.Y. Feb. 5, 2013) ................................................. 28

*Gunter* v. *Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)...................................................................................... *passim*

*Hensley v. Eckerhart*,
*461* U.S. 424,436 (1983) ................................................................................................. 22

ii

*Hoffman v. Sbarro, Inc.*
982 F. Supp. 249 (S.D.N.Y. 1997) (Sotomayer, *J.*) ........................................................ 5

*In re Ikon Office Solutions Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ....................................................................... 22, 27

*In re Insurance Brokerage Antitrust Litig.*,
2007 WL 2916472 (D.N.J. Oct 5, 2007) ................................................................ 20

*Kraus v. PA Fit II, LLC*,
155 F.Supp.3d 516, 532–33 (E.D.Pa. Jan. 11, 2016) ................................................ 18

*Krstic, et al. v. J.R. Contracting & Environmental Consulting, et al.*,
3:09-cv-02459, Dkt. No. 92 (D.N.J. March 1, 2013) ................................................ 10

*Lan* v. *Ludrof*,
2008 WL 763763 (W.D. Pa. Mar. 21, 2008) ........................................................... 23

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
No. 17-CV-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017) ........................ 11

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ................................................................. 11, 13, 14

*Massiah v. MetroPlus Health Plan, Inc.*,
No. 11–cv–05669(BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ..................... 19

*McKenna v. Champion Int'l Corp.*,
747 F.2d 1211 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ...................................................................... 10

*McLaughlin* v. *Richland Shoe Co.*,
486 U.S. 128 (1998) ................................................................................................. 3

*In re Metoprolol Succinate Antitrust Litig.*,
06-52 .............................................................................................................. 29

*In Re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465,489 (S.D.N.Y. 1998) ...................................................................... 30

*Ornelas, et al. v. Hooper Holmes, Inc., et al.*,
3:12-cv-3106, Dkt. No. 89 (D.N.J. Aug. 5, 2016) ................................................... 10

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
No. 08 CIV. 7670 .............................................................................................. 25

*Powell v. Lakeside Behavioral Healthcare, Inc.*,
No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011) .............................. 11

iii

*Prena v. BMO Fin. Corp.*,
No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015)..................................... 11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d at 341 .................................................................................................... 30

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491,517 (W.D. Pa. 2003) ............................................................ 30

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294,301 (3d Cir. 2005)...................................................................... 21, 23

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d at 307 .............................................................................................. 24, 29

*Rivet v. Office Depot, Inc.*,
207 F.Supp.3d 417, 432 (D.N.J. Sept. 13, 2016) ........................................................ 4

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. CIV. A. 08-1432 DMC, 2012 WL 1964451 (D.N.J. May 31, 2012) ..................... 27

*Scovil v. FedEx Ground Package Sys.*,
2014 WL 1057079 (D. Me. Mar. 14, 2014) ......................................................... 19

*Singleton v. First Student Management LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014)........................................................ 11, 14

*In re SmithKline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990) ........................................................................ 31

*Souryavong* v. *Lackawanna Cty.*,
2017 WL 4159604 (3d Cir. 2017)......................................................................... 3

*Spicer v. Pier Sixty LLC*,
2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) ....................................... 28

*Stallard v. Fifth Third Bank*,
slip op., No.2: 12-cv-01 092 (W.D. Pa. Feb. 25, 2015) ...................................... 15, 28

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)........................................................................... 19, 21

*In re Tricor Direct Purchaser Antitrust Litig.*,
05-340-SLR (D. Del. Apr. 23,2009) ...................................................................... 29

*In re Vicuron Pharms, Inc. Sec. Litig.*,
512 F. Supp. 2d 279 (E.D. Pa 2007) ...................................................................... 30

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) (Robinson, C.J.) ........................................................ 21

*Woods v. N.Y. Life Ins. Co.*,
686 F.2d 578 (7th Cir. 1982) ........................................................................................ 10

*Zavala v. Wal Mart Stores Inc.*,
691 F.3d 527 (3d Cir. 2012) ......................................................................................... 15

**Statutes**

29 U.S.C. § 255(a) ......................................................................................................... 3

Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq.* ................................................. 4, 9

Maryland Wage and Hour Law, MD. Lab. & Empl. Code §§ 3-401, *et. seq.* ................................ 4

Maryland Wage Payment and Collection Law, MD. Lab. & Empl. Code §§ 3-501, 3-502, 3-505, 3-507.2(b), *et. seq.* ......................................................................................... 4

Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq* ...................................... 4

State Wage and Hour Law, N.J.S.A. §§34:11-56(a), *et seq* .......................................... 4

This Fair Labor Standards Act ("FLSA") lawsuit has been settled, and originating Plaintiffs Anthony Gervasio, Michael Dinse, James Cloud and Christopher Carmany,[1] along with the other Opt-in Plaintiffs who are current and/or former Assistant General Managers (hereinafter collectively "AGMs"), employed by Defendant Wawa, Inc., ("Wawa") who have joined this case (collectively "Plaintiffs"), submit this brief in support of their motion for judicial approval of the settlement with Wawa.  Plaintiffs submit that this is a favorable result particularly in light of the claims, which due to reclassification of the AGM position were capped on December 28, 2015.  The fully executed "Joint Stipulation of Settlement and Release" ("Agreement") is attached to Plaintiffs' approval motion.  As discussed herein, the Agreement should be approved under the FLSA because it is a fair and reasonable resolution of a *bona fide* dispute between the parties.

## I.  BACKGROUND

This is a case for unpaid overtime based on the allegation that Wawa Assistant General Managers ("AGMs") were misclassified as exempt.  Plaintiffs are current and former Wawa AGMs.

Had Wawa not agreed to settle, Plaintiffs faced substantial and real litigation risk.  The parties would have disagreed about the proper method for calculating

---

[1] Named Plaintiff Richard Bongiovanni withdrew from this action.

damages, the inputs to the calculation (namely, the average number of hours worked and whether Defendants would have been eligible for a fluctuating work week analysis), and whether Wawa acted willfully or in good faith (which could extend the limitations period from two years to three years and impose liquidated damages).  Wawa would have opposed class certification of the state law classes and would have made an application for decertification of the conditionally certified FLSA Collective, and it likely would have moved for summary judgment as well.  If Plaintiffs proceeded to trial, they might not have prevailed.  In the last ten years, three of the five managerial misclassification collective actions that have proceeded to trial have been won by the employers.  And even if Plaintiffs were to prevail at trial, there is little doubt that they would face post-trial motions and appeals.

District Judge Jones of the Middle District of Pennsylvania captured this point in approving a hybrid FLSA retail manager misclassification case settlement when he wrote, "[i]t is undisputed that copious risks abound with respect to maintaining this action and establishing liability." *Craig v. Rite Aid Corp*., 2013 WL 84928, at *9 (M.D.Pa. Jan. 7, 2013).

As stated in the Agreement, Defendant denies any wrongdoing and continues to assert that, absent this settlement, they ultimately would prevail in the Action.  *See* Agreement (Ex. A) at 9 ¶ VI.  Absent settlement, however, Plaintiffs

would have faced certain litigation risks both factual and legal. The most prominent of these are summarized below:

First, absent settlement, Defendant will vigorously assert that the FLSA claim is covered by a two-year limitations period rather than the three-year period encompassed in the settlement. The FLSA provides a two-year statute of limitations; but, a three-year limitations period will apply to "a cause of action arising out of a willful violation." 29 U.S.C. § 255(a). To obtain a three-year statute of limitations, plaintiff must establish that the employer's conduct was willful. *See McLaughlin* v. *Richland Shoe Co.,* 486 U.S. 128, 135 (1998). An employer's conduct is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id.* at 133. In this Circuit to prove a willful violation, an employee must show that the employer actually knew of the specific FLSA requirement at issue at the time of the violation and intentionally did not comply with it. *Souryavong* v. *Lackawanna Cty.,* 2017 WL 4159604 (3d Cir. 2017).

The practical effect of the FLSA two-year statute of limitations is that, even if Plaintiffs succeed on the merits of their claims, the vast majority of FLSA collective action members would be barred from recovering *any* damages absent a showing of willfulness. That is because all but approximately nine FLSA collective action members opted-into the action long after December 28, 2017 more than two

3

years after Wawa reclassified AGMs to overtime eligible non-exempt employees. Thus, an unfavorable finding regarding willfulness could doom the claims of all but approximately nine AGMs.

Second, Defendant would pursue decertification of the conditionally certified collective action. Plaintiffs disagree and believe the law is on their side. *Rivet v. Office Depot, Inc*., 207 F.Supp.3d 417, 432 (D.N.J. Sept. 13, 2016). However, this case is one of the hardest kinds of misclassification cases - an assistant manager case where the collective members were spread across the country and working under different supervisors - and, in general, more misclassification cases have been lost at trial than won.

A. <u>Pertinent Procedural History.</u>

On January 12, 2017, Plaintiffs initiated this case by filing a class and collective action complaint against Wawa alleging, on behalf of themselves and allegedly similarly situated AGMs who were employed by Defendant in the United States for Defendant's alleged failure to pay their "AGMs" for all hours worked, and for its alleged misclassification of AGMs as exempt in violation of the Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq*. ("FLSA"), the New Jersey State Wage and Hour Law, N.J.S.A. §§34:11-56(a), *et seq*. ("NJWHL"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq*., the Maryland Wage and Hour Law, MD. Lab. & Empl. Code §§ 3-401, *et. seq.* ("MWHL"), and the Maryland

4

Wage Payment and Collection Law, MD. Lab. & Empl. Code §§ 3-501, 3-502, 3-505, 3-507.2(b), *et. seq.* ("MWPCL"). Dkt. No. 1,10.[2]

On April 21, 2017, Plaintiffs amended their complaint (*see* Dkt. No. 10) and on May 5, 2017 Wawa answered. Dkt. No. 14. Defendant changed the classification of AGMs on December 28, 2015. Defendant changed the position to a non-exempt (or overtime eligible) position, which resulted in claims that uniformly diminished over time for the entire putative collective. In a FLSA collective action, the statute of limitations for each plaintiff runs until he or she files written consent with the court electing to join the lawsuit, not when the named plaintiff files the complaint. In FLSA cases, employees' claims continue to "die daily" until the plaintiff opts into the action. *Hoffman v. Sbarro, Inc*. 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (Sotomayer, *J.*). Plaintiffs moved for tolling *ores tenus*, or in the alternative for the ability to brief the issue of tolling at the initial pretrial conference before Judge Arpert on June 15, 2017. *See* Dkt. No. 18, 22. Plaintiffs sought tolling to stop the potential Opt-ins' FLSA claims from expiring prior to their receiving notice of this lawsuit. Judge Arpert granted Plaintiffs' application to file a motion, but following briefing ultimately denied Plaintiffs' tolling application. The parties conducted discovery concerning conditional certification issues and on October 2, 2017, Plaintiffs filed their motion for conditional certification. Dkt. No. 37. In their

---

[2] The Complaint was later amended on April 21, 2017.

motion, Plaintiffs requested that the Court send notice to the following FLSA collective: "all AGMs employed by Defendant Wawa, Inc., . . . throughout the United States at any time from January 12, 2014, to December 28, 2015. . . who were classified as exempt employees." Dkt. No. 37 at 6.  On October 2, 2017 Defendant made a motion to compel which on October 27, 2018 was denied without prejudice, pending a decision on Plaintiffs' conditional certification. Dkt. No. 42.  On January 11, 2018 the Court granted Plaintiffs' motion to conditionally certify the FLSA Collective. Dkt. No. 24.

The Court-authorized notice provided that if an individual elected to join the Action, he or she would be "bound by and share in any ruling, settlement or judgment, favorable or unfavorable" and that he or she "designate[d] the named Plaintiffs as [his or her] representatives, and to the fullest extent possible, [he or she] designate[ed] the named Plaintiffs and their Counsel to make decisions on [his or her] behalf concerning the case, the method and manner of conducting the case, and all other matters pertaining to the lawsuit.  Decisions made and agreements entered into by Plaintiffs relating to this lawsuit will be binding [] if [he or she] join[ed] the lawsuit." Dkt. No. 51-3.   In addition, in the consent forms retuned by the Opt-In Plaintiffs they agreed that "[b]y signing and returning this consent form, I designate Hepworth, Gershbaum & Roth, PLLC and The Law Offices of Joseph Monaco, P.C., ("the Firms") to represent me and make decisions on my behalf concerning the

6

litigation and any settlement." They also agreed, "to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable." On February 1, 2018, Plaintiffs' Counsel sent the Court-authorized notice to approximately 1,040 current and former AGMs. Approximately 333 AGMs joined the action by signing and filing a Notice of Filing of Consent to Join Form ("Opt-In Plaintiffs"). At the end of the notice process, a total of three-hundred twenty-eight (328) Wawa AGMs, had opted-in to this litigation. *See* Dkt. No. 1, 28-29, 52-57, 59-89, 92-93, 95, 98. The parties did not pursue discovery on the potential state law claims or brief the question of class certification at any time.

The parties then asked that this case be stayed to allow the parties to mediate the claims of the now ascertained FLSA Collective. Dkt. No. 90. The Court granted a stay and the parties mediated with Hon. Diane M. Welsh. *See* Dkt. No. 91. Hon. Diane M. Welsh is a retired judge who is now a nationally well-regarded mediator experienced in class and collective actions.

Following a full day of mediation with the assistance of Judge Welsh, the parties reached an agreement in principle to settle this case for the 328 AGMs who were part of the FLSA collective. *See* Declaration (Ex. D) ¶ 12. At the mediation and prior to it each party performed a detailed analysis of the discovery exchanged related to both merits and certification issues. Settlement discussions occurred after the exchange of relevant payroll data so that Plaintiffs were able to negotiate

before Judge Welsh with an appreciation of the alleged unpaid wages at issue.  The parties then focused on drafting and executing the attached Agreement.

**B.  The Settlement.**

If approved, the $1,400,000.00 settlement fund will be distributed as follows: (i) $892,640.00 will be paid to the 333 Plaintiffs, see Agreement (Ex. A) at 3 ¶ 14; 12 ¶ 4, the named Plaintiffs Anthony Gervasio, Michael Dinse, James Cloud and Christopher Carmany will each receive (ii) a $5,000.00 service award (in addition to their Settlement Share); and Opt-ins Eric Romolini, Joeseph Fitzgerald, and Thomas Watkins will each be paid (iii) a $1,000.00 as service award, *id.* at 9 ¶ VII; (iv) approximately $17,694.00 to the third-party settlement administrator retained to administer the settlement; and (v) $466,666.66 will be paid to Plaintiffs' counsel for attorney's fees and costs incurred, *id.* at 9 ¶ VII; 3-4 ¶ 14.[3]

The proposed payments to Plaintiffs under the settlement represent a fair and appropriate value based upon litigation risks and the full value of their claims as calculated by Plaintiffs' counsel.  The average settlement amount for each Opt-In Plaintiff is $4,268.29, which is allocated based on the following formula: (i) each Named Plaintiff and Opt-In Plaintiff receives on average $86.74 per week, (ii) multiplied by the number of qualifying workweeks each Plaintiff has in the action.

---

[3] Any disapproved portion of the requested service award, fees, or expenses will revert to Defendant.  *See id.* at 9 § VII.

In consideration for the above payments, the Federal Release Opt-Ins Plaintiffs defined in the Agreement (*see* Agreement at 15-16 § 3) release Wawa from "all overtime and other wage claims, obligations, causes of action, actions, demands, rights, and liabilities, whether known or unknown, whether anticipated or unanticipated, under the FLSA, 29 U.S.C. § 201, *et seq*., arising prior to December 28, 2015, that: (a) were pled in the Action at any time; and/or (b) could have been pled based on the factual allegations in the Action, including all claims based on alleged failure to pay any type of straight time, overtime wages or any other wages." *Id*. The release for the Federal and State Release Opt-In Plaintiffs is substantially similar but also releases the state law claims pled in Plaintiffs' Complaint for Plaintiffs who worked in states for which Plaintiffs had pled state law claims. *Id*.

## II.   <u>ARGUMENT</u>
### A.   **A One-Step Approval Process Is Standard for FLSA Settlements**.

In the Third Circuit and throughout the country, a one-step approval process is appropriate in FLSA Opt-In settlements that do not include Rule 23 opt-out classes. Section 216(b) collective actions such as this do not implicate the same due process concerns as Rule 23 class actions because they require workers to affirmatively opt in to the litigation and do not bind absent class members who have not affirmatively consented to assert their claims. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different

from collective actions under the FLSA.").  Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (due process concerns present in Rule 23 class actions are not present in FLSA collective actions).  There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they affirmatively decide to participate, thus, the Court does not assume the same 'fiduciary' role to protect absent class members as it would under Rule 23 when assessing a proposed settlement resolving FLSA claims", the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement. *Bredbenner v. Liberty Travel, Inc*., 2011 WL 1344745, at *1 (D.N.J. April 8, 2011); *see, e.g., Ornelas, et al. v. Hooper Holmes, Inc., et al*., 3:12-cv-3106, Dkt. No. 89 (D.N.J. Aug. 5, 2016) (Arpert, *M.J.*); *Krstic, et al. v. J.R. Contracting & Environmental Consulting, et al*., 3:09-cv-02459, Dkt. No. 92 (D.N.J. March 1, 2013)(Arpert, *M.J.*); *see also Castillo v. Noodles & Co*., No. 16-CV-03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016)(implementing a one-step approval

process for a FLSA Collective settlement); *Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) )(implementing a one-step approval process for a FLSA Collective settlement); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017))(implementing a one-step approval process for a FLSA Collective settlement); *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011).

Here, each of the settling Plaintiffs affirmatively agreed to assert his or her claims in this action and to bind himself/herself to the decisions made by Collective Counsel on their behalf. This Court has held that it should review a FLSA collective action settlement to ensure it "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-1355 (11th Cir. 1982); *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *4 (D.N.J. March 26, 2012); *Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *2 (M.D.Pa. Sept. 25, 2013). Once satisfied that a *bona fide* dispute exists between the parties, the Court must make the second determination of whether the settlement is fair and reasonable and does not frustrate the implementation of the FLSA in the workplace. *Singleton v. First Student Management LLC*, 2014 WL

3865853, at *9 (D.N.J. Aug. 6, 2014); *Brumley*, 2012 WL 1019337, at *4; *Davis v. Essex County*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015).  As discussed below, the Agreement satisfies each of these elements and warrants the Court's approval.

Although the Third Circuit Court of Appeals has never specifically addressed the standards to be applied in evaluating the fairness of an FLSA settlement, Courts in this District engage in a three-part analysis:

> First, the court must determine the settlement concerns a bona fide dispute.  Second, the court must determine the settlement is fair and reasonable . . . [a]nd, third, the court must determine the agreement does not frustrate the implementation of the FLSA in the workplace.

*Davis v. Essex County*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015).

### 1.      *The settlement resolves a bona fide dispute.*

As discussed above, despite this settlement, Defendant continues to deny any wrongdoing and asserts that it would ultimately prevail if this case had not been resolved.  An employer's continued denial of liability in a settlement agreement represents sufficient evidence of a *bona fide* dispute.  *See Howard*, 197 F. Supp. 3d at 778.  Furthermore, as outlined in section B, *supra*, there are several factual and legal arguments would have persisted through discovery and dispositive motion practice had this case not been resolved with the assistance of Judge Walsh.  As one district court observed, the adversarial nature of contested litigation in FLSA matters

is also evidence of a *bona fide* dispute between the parties. *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010).

Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54; *Bredbenner*, 2011 WL 1344745, *18; *Clark v. Ecolab Inc.*, Nos. 07-8623, 04-4488, 06-5672, 2010 WL 1948198, *7 (S.D.N.Y. May 11, 2010).  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.; see also*, *Castagna v. Madison Square Garden, L.P.*, No. 09-10211, 2011 WL 2208614, *4 (S.D.N.Y. June 7, 2011) ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."); *see also Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) ("An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial.").  It is also telling that the parties required an experience collective action mediator to resolve this case at arms-length due to the many disputed legal and factual issues.

Thus, the *bona fide* dispute factor is satisfied here.

## 2.    *The agreement is "fair and reasonable."*

The Court has a duty to "determine whether the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Davis v.*

13

*Essex County*, 2015 WL 7761062, at \*2 (D.N.J. Dec. 1, 2015). Courts approve wage and hour settlements that are reached as a result of contested litigation to resolve *bona fide* disputes. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354. "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

The settlement in this case easily meets the standard for approval. The settlement was the result of pre-suit investigation, extensive litigation focused discovery, production to Plaintiffs of all relevant pay and hours data for all 328 Plaintiffs, and substantial arm's-length negotiations. Hepworth Decl. ¶¶ 16, 17. Recognizing the uncertain legal and factual issues involved, the Parties reached this settlement pending before the Court after private mediation before an experienced mediator. *Id.* ¶ 15. The settlement amount of $1,400,000.00 is favorable, especially in light of the considerable risk that Plaintiffs face as well as the size of Plaintiffs and the Opt-In Plaintiffs Claims, which ceased accruing (for currently employed AGMs) when Defendant reclassified the position.

*First*, after attorneys' fees, service awards, and costs, including settlement administration costs, are deducted, each Opt-in will receive on average approximately $2,719.00, while before those deductions the average award is $4,268.29. However, by Defendant's estimate, even if Plaintiffs were to establish at

14

trial that AGMs should have been classified as non-exempt, there is a substantial risk that if the issue of willfulness was not found in Plaintiffs' favor that the number of individuals compensated for claimed overtime violations will be drastically smaller than the number of Plaintiffs and Opt-ins receiving compensation under the parties' current agreement.

*Second*, there was a risk that Plaintiffs would not successfully defend against a motion for decertification or in maintaining a collective through trial.  Defendant would likely argue that the differences among various stores and other individualized questions would warrant decertification of a collective.  Although Plaintiffs disagree, defendants in other cases have prevailed on such arguments. *See, e.g.*, *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 537–38 (3d Cir. 2012) (denying collective certification of assistant store manager claims); *see also Beckman*, 293 F.R.D. at 480 (collecting misclassification cases where courts decertified FLSA collectives).

*Third*, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  The status of misclassification cases under the FLSA is highly contextual with facts pointing in both directions, and some cases supporting Defendant's position.  For example, in *Aquilino v. Home Depot, U.S.A., Inc.*, 2011 WL 564039, at \*11–12 (D.N.J. Feb. 15, 2011), this Court granted decertification and found that there were substantial differences in the factual and

15

employment settings of Home Depot's merchandising assistant store managers, that job responsibilities and duties varied from store to store, from shift to shift, and in some cases from subordinate employee to subordinate employee, which precluded the Court from finding any real uniformity among the plaintiffs and the opt–ins.  Although Plaintiffs believe this case is distinguishable, Defendant would likely argue that similar to *Aquilino* the AGM position is too disparate for collective treatment.  While Plaintiffs believe they could ultimately prove liability, this would require significant development, and declarations supporting Defendant's opposition to certification introduced further risk by asserting a variety of exempt tasks contrary to Plaintiffs' testimony.

Absent settlement, this litigation would require significant additional discovery, including depositions of Opt-In Plaintiffs and other employees of Wawa such as its corporate representative(s) and the General Managers of the AGMs to address the defenses outlined in section 1, *supra*.  This discovery would have been extremely time consuming and expensive for both sides.  Thus, the avoidance of unnecessary expenditure of time and resources benefits all parties, and weighs in favor of approving the settlement.

In resolving whether a settlement is fair and reasonable, the true question is whether, in light of these risks, Plaintiffs are getting good value.  In this case Plaintiffs settlement represents a clearly fair and appropriate value.  As already

discussed, this litigation carries significant litigation risks, making it possible that Plaintiffs could either lose this case or have their damages significantly diminished. *See* section 1, *supra*. Meanwhile, the settlement provides a very good and immediate result to the Plaintiffs covered by the settlement who will be receiving approximately $2,719.00 after reductions for the proposed attorney's fees, costs and service awards. This amount which is substantial for the claims at issue, is even more so when the limited claims period, due to reclassification of the AGM period is considered. Using what Class Counsel believes to be a reasonable set of assumptions (Defendant disputes Plaintiffs could recover the high number) Plaintiffs contend that the value of the collective and class action AGM Claims presented in the case here would have ranged from less than $100,000.00 assuming that there was only a 2 year statute of limitations for the FLSA claims (at p.3 supra - noting only 9 AGMs would be within the 2 year FLSA statutory time period) and assuming that the claims would be limited to the FLSA claims only, to approximately $4,335,110.39 million (using the "time and one half" approach and a set of assumptions favorable to Plaintiffs – including a three-year limitations period for FLSA claims, as well as state law claims and using the punch data provided by the defendants that averaged out to approximately 47.5 hours a week – and no liquidated damages). Accounting for the risks already articulated that are inherent to this case, Plaintiffs' Counsel believes that the settlement is reasonable

and fair.

**3.**      *The Settlement Does Not Frustrate the Implementation of the FLSA.*

In addition to being "fair and reasonable," the settlement is free of any terms that would frustrate the implementation of the FLSA.  The Agreement does not contain a broad confidentiality provision that would prevent the public filing of the Agreement thereby preventing the terms of this agreement from becoming known, as "courts have recognized [this] as antagonistic to the FLSA's purposes." *Brumley v. Camin Cargo Control, Inc.*, No. 08–1798, 2012 WL 1019337, at \*6 (D.N.J. Mar. 26, 2012).  In addition, while courts have recently rejected FLSA settlements containing general release language, *see, e.g., Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 532–33 (E.D.Pa. Jan. 11, 2016); *Bettger v. Crossmark, Inc.*, 2015 WL 279754, at \*9 (M.D.Pa. Jan. 22, 2015), this settlement poses no such problem.  Here, the release is far more narrow, covering only wage and hour claims for the limited time period at issue in the complaint.  As such, the Agreement does not frustrate the FLSA.

## B.      The Service Award Warrants Approval.

Subject to Court approval, the named Plaintiffs Anthony Gervasio, Michael Dinse, James Cloud and Christopher Carmany will receive a $5,000.00 service award and Opt-Ins Plaintiffs Eric Romolini, Joeseph Fitzgerald, and Thomas Watkins will be paid $1,000.00 each as service awards.  *See* Agreement (Ex. A) 9-

10 at ¶ VII.  This award is in recognition of the named Plaintiffs' courage to step forward and publically challenge Defendant's compensation practices and seeking recovery on behalf of other AGMs.  It is also in recognition of their active role in this litigation which included, *inter alia*, providing documents used in support of Plaintiffs' conditional certification motion, providing discovery responses, consulting with Plaintiffs' Counsel concerning the type of documentation maintained by Wawa, attending a deposition and reviewing the Agreement.  The Opt-in Plaintiffs receiving service awards each sat for a deposition.  The service award for these individuals is in recognition of their time and their provision of information essential to conditional certification of this action.

As this Court has recognized, service awards are not uncommon in class or collective action litigation because they "reward the public service of contributing to the enforcement of mandatory laws."  *Devlin v. Ferrandino & Son, Inc.*, 2016 WL 7178338, at *11 (E.D.Pa. Dec. 9, 2016) (internal quotations omitted); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) ("The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred ruing the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.").  In addition, courts have recognized named plaintiffs in class/collective litigation risk potential ramifications with not only their current employer, but also potentially with future

employers. *See Scovil v. FedEx Ground Package Sys.*, 2014 WL 1057079, at *6–7 (D. Me. Mar. 14, 2014) ("The reason commonly given for the higher awards in these cases is the fear and risk of retaliation and embarrassment in the workplace"); *Massiah v. MetroPlus Health Plan, Inc.,* No. 11–cv–05669(BMC), 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (approving service awards of $5,000 each to two plaintiffs, noting that "[s]uch service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *Edelen v. Am. Residential Servs*., LLC, No. CIV.A. DKC 11-2744, 2013 WL 3816986, at *16 (D. Md. July 22, 2013) ("although there is no indication that [the named plaintiff] faces any specific challenges in his current or future job prospects as a result of his participation in this lawsuit, there clearly is a risk that he could"). Thus, it is not unusual for initiating plaintiffs in employment lawsuits, such as this, to receive significant enhancement awards in recognition of their service to the entire class/collective. *See In re Insurance Brokerage Antitrust Litig*., 2007 WL 2916472 at *8 (D.N.J. Oct 5, 2007) ($10,000 incentive award to each plaintiff, resulting in total payment of $250,000); *Lazy Oil,* 95 F. Supp. 2d at 345, 324-25 (incentive awards of $5,000 to $20,000 awarded); *Godshall v. Franklin Mint Co*., 2004 WL 2745890 at *4 (E.D. Pa. Dec. 1, 2004) ($20,000 to each named plaintiff).

Here, the requested service awards are justified and extremely reasonable based on the named and Opt-In Plaintiffs efforts to achieve a recovery on behalf of the Opt-Ins.  Thus, the proposed service award is appropriate and warrants approval.

### C.     The Request for Attorneys' Fees is Reasonable and Should be Approved.

Counsel for the Collective seeks an award of attorneys' fees and reimbursement of reasonable expenses in the amount of $466,666.66 (which is a fee of approximately 1/3% of the $1.4 million total settlement amount, less when considering that Plaintiffs incurred $46,329.10 in costs). Counsel submits that they are entitled to such reasonable attorneys' fees and expenses to compensate them for their work in achieving this settlement on behalf of the collective.  The determination of the fee is up to this Court and a reasonable method, often adopted by this circuit is the percentage-of-recovery with a lodestar cross check for a case such as this where a common fund is created for a class or collective. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 820-22 (3d Cir. *1995); Sullivan,* 667 F.3d at 330 *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 261 (D. Del. 2002) (Robinson, C.J.) ("In determining the fee award in a common-fund class action, the Third Circuit follows the percentage-of-the-recovery method.").

The Third Circuit has identified several factors that a district court should consider in determining a common fund award of attorneys' fees. These factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294,301 (3d Cir. 2005) (citing *Gunter* v. *Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000)). Each of these factors favors the requested award of attorneys' fees.

### 1.    The Requested Fee is Reasonable as a Percentage of the Common Fund *(Gunter* Factor 1).

First, the fund created by the Settlement is $1.4 million and the Collective consists of 328 individuals. As noted above, the average gross amount per each of the 328 Collective members eligible to share in the recovery is approximately $4,268.29, a particularly excellent amount, more than commensurate with other settlements of misclassification collective actions. Inasmuch as the result achieved is an important factor to be considered in assessing the propriety of an attorneys' fee award, this settlement certainly meets this standard. *Hensley v. Eckerhart, 461* U.S. 424,436 (1983) ("the most critical factor is the degree of success obtained"). In

addition, counsel is well experienced in these kinds of cases, *see* Hepworth Decl. ¶ 2, Hepworth Decl., Ex. D; and believe that the settlement represents an excellent result. Accordingly, this factor is met. *See In re Ikon Office Solutions Inc. Sec. Litig*., 194 F.R.D. 166, 179 (E.D. Pa. 2000) ("[t]he most significant factor in this case is the quality of representation, as measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience, and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'") (citation omitted).

## 2. The Presence or Absence of Substantial Objections by Members of the Collective (*Gunter* Factor 2)

Second, Collective members received notice of the Settlement terms from Plaintiffs' Counsel, including of those terms setting out the amount of attorneys' fees and maximum amount of the expenses sought. In anticipation of finalizing the settlement, Plaintiffs' Counsel mailed out a letter detailing the settlement to all Opt-in Plaintiffs to explain the settlement and to give them the opportunity to weigh in on the settlement. There was not a single Opt-in that contacted us that did not want to participate in the settlement. In fact, Plaintiffs' Counsel has spoken with or heard from approximately 78 Collective Members to date. No objections have been raised or filed to the requested amount of attorneys' fees or expenses, or, indeed, to the

Settlement itself.  Moreover, this number is inclusive of all costs, including those for filing, conducting 8 depositions, and sending notice to the putative collective following conditional certification all of which amounts to $46,329.10 in costs for which Plaintiffs are not seeking separate reimbursement from the settlement fund (the only cost not included are those associated the TPA's administration of the settlement).  "The fact that not a single objection has been filed to the Settlement . . . is strong evidence that counsel for the Class have achieved a very good result for the Class." *Lan* v. *Ludrof,* 2008 WL 763763, at *23 (W.D. Pa. Mar. 21, 2008). Accordingly, this factor also favors the requested attorneys' fee award. *In re Rite Aid Corp. See. Litig.,* 396 F.3d at 305 ("The District Court did not abuse its discretion in finding the absence of substantial objections by class members to be the fee requests weighed in favor of approving the fee request."); *Careccio* v. *BMW of N. Am. LLC,* 2010 WL 1752347, at *7 (D.N.J. Apr. 29, 2010) (one of the "strong indicators" that a fee request was fair and reasonable was that "[n]one of the objector letters mentioned the fee award.").

### 3. The Skill and Efficiency of the Attorneys Involved and the Amount of Time Devoted to the Case (*Gunter* Factors 3 and 6)

The FLSA Collective is represented by experienced counsel who have invested substantial time and resources into the prosecution of this litigation. *See* Hepworth Decl. ¶ 23.  They have served as class counsel in numerous class and/or

collective actions, including many significant wage and hour misclassification cases involving retail managerial misclassifications.  As importantly, they steered the case from inception through first-stage discovery, including successfully combatting a motion to compel, 8 depositions and contested conditional certification briefing, through the opt-in of 328 FLSA collective action participants.  The case was then aggressively mediated by both sides to reach the settlement terms. Hepworth Decl. ¶ 16. Subsequently, the Settlement Agreement and its various exhibits had to be negotiated and finalized.  That process took over two months and involved multiple conferences with the mediator. *Id.*  Concurrent with that process Plaintiffs sent notice of the settlement to their clients and fielded inquiries and calls.

For all of these reasons - which is a bare summary of what was done – Plaintiffs' Counsel expended 1,254.25 hours of professional time for an aggregate lodestar of $786,154.25. Hepworth Decl. ¶ 23. The hours reported are reasonable for a case of this complexity and magnitude, the stage of the case and duration all of which were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. In addition, there is still work yet to be done that will be necessary to effectuate the administration of the Settlement which is recognized as necessary and compensable.[4] *Beckman* v. *Key*

---

[4] There will certainly be additional time that will be required to administer the Settlement in the future. *See* Hepworth Decl. ¶ 26. In Plaintiffs' Counsel's experience, administering settlements of this nature and size requires ongoing commitment. For example, FLSA Collective Members have already had questions regarding the Settlement, and, based upon experience, such calls will continue through

*Bank, NA.,* 293 F.R.D. at 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 CIV. 7670 BSJJCF, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement  funds, the significant negative multiplier will diminish over time.").

## 4. The Complexity and Duration of the Litigation *(Gunter* Factor 4)

Fourth, the duration of this litigation weighs in favor of the award of attorneys' fees.  Plaintiffs' Counsel have vigorously worked on this case for about three years.  The Settlement, reached upon a full and fair knowledge of the status of the claims and defenses in the case and the risks they posed saved a substantial amount of time that otherwise would have been spent on more discovery, motion practice, and pretrial activities. In short, "[t]he Settlement saves the parties

---

and beyond final approval as they report lost checks and request new ones, raise questions about tax consequences and generally call for advice. *Id.* There will, in addition, also be time spent overseeing the finalization of the claims process. *Id.*

substantial time and money." *In re Datatec Sys.,* 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007).

## 5. The Risk of Nonpayment (*Gunter* Factor 5)

The risk of nonpayment is significant. Counsel "undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts. Courts recognize the risk of non-payment as a factor in considering an award of attorneys' fees. *Datatec,* 2007 WL 4225828, at *7. This case was one of the hardest kinds of misclassification cases - an assistant manager case where the collective members were spread across the country and working under different supervisors - and, in general, more misclassification cases have been lost at trial than won. This case was entirely litigated on a contingency basis, with no guarantee of any payment of any sort.  As Judge Jones wrote in approving a fee in another retail misclassification case, "concerning the risk of nonpayment, we note that because Class Counsel accepted this case on a contingent fee basis, the risk of nonpayment was and remained substantial throughout." *Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *12 (M.D. Pa. Jan. 7, 2013).

## 6. Awards in Similar Cases (*Gunter* Factor 6)

The requested one third fee is commensurate and in line with multiple other settlements, particularly wage and hour cases within this Circuit. While there is no benchmark for fee awards in the Third Circuit there has been a "range of 19

27

percent to 45 percent of the settlement fund approved in other litigations." *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. CIV. A. 08-1432 DMC, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (approving 33.3% fee in $12.25 million securities settlement); *see In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d at 822 (setting forth same range); *see also In re Ikon Office Solutions,* 194 F.R.D. at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent"); *In re Computron Software, Inc.,* 6. F. Supp. 2d 313, 322-23 (D.N.J. 1998) ("There is no set standard, however, on how to determine a reasonable percentage.  Awards utilizing the percentage-of recovery method can reasonably range from nineteen percent to forty-five percent of a settlement fund . . . . [T]he percentage awarded, should, and generally does, increase commensurate with increased quality of representation.").  Indeed, an award of one-third of the recovery is entirely in line with wage and hour settlements, including misclassification cases and retail misclassification cases within the Third Circuit.

Indeed, an award of one-third of the recovery is entirely in line with wage and hour settlements, including misclassification cases and retail misclassification cases within the Third Circuit. *See Creed,* 2013 WL 5276109, at *6 ("an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit"); *Craig,* 2013 WL 84928, at *11–14 (one-third for fees and costs

reasonable and in line with precedents; citing cases; approving 32% fee award in

$20.9 million retail misclassification settlement); *Stallard v. Fifth Third Bank,* slip

op., No.2: 12-cv-01 092 (W.D. Pa. Feb. 25, 2015) (fee of one third of $3.25

million).[5] While this Court has not had an opportunity to award a fee in an FLSA

collective action, it has awarded an attorney fee of one-third of the recovery in

class actions and the same common benefit principles apply. *See e.g. In re Tricor*

*Direct Purchaser Antitrust Litig.,* 05-340-SLR (D. Del. Apr. 23,2009) (awarding

one-third of $250 million settlement as fee); *see also In re Metoprolol Succinate*

*Antitrust Litig.,* 06-52 MPT (D. Del. Jan 12,2012) (attached as Exhibit E hereto).

Finally, the Third Circuit courts also confirm the reasonableness of a

percentage of the recovery awarded by cross-checking it with class counsel's

lodestar. *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d at 307.  The lodestar analysis is

performed by multiplying the number of hours reasonably worked on a client's

case by a reasonable hourly billing rate for such services based on the given

---

[5] This is true in other courts as well. *See, e.g., Flores v. Anjost Corp.,* 2014 U.S.
Dist. LEXIS 11026, at *24-26 (S.D.N.Y. Jan. 29, 2014) (awarding 33 1/3% of
$1,050,000 settlement); *Guaman* v. *Ajna-Bar NYC"* 2013 U.S. Dist. LEXIS 16206,
at *17-18 (S.D.N.Y. Feb. 5, 2013) (one-third of $250,000 settlement in an FLSA
and NYLL wage and hour restaurant case); *Capsolas v. Pasta Res. Inc.,* 2012 U.S.
Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (33.33% fee in $5.25 million
settlement); *Spicer v. Pier Sixty LLC,* 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y.
Sept. 14, 2012) (33% fee in $8.5 million settlement); *Alli v. Boston Mkt. Corp.,* 10-
cv-0004, Order (D. Conn. Apr. 12,2012) (33.33% fee in $3 million settlement);
*deMunecas v. Bold Food, LLC,* 2010 U.S. Dist. LEXIS 87644, at *19 (S.D.N.Y.
Aug. 23, 2010) (33% fee in $729,000 settlement).

geographical area, the nature of the services provided, and the experience of the attorneys. *Id.* at 305. If the lodestar multiplier, which is equal to the proposed fee award divided by the product of the total hours and the billing rate, is large, the award calculated under the percentage-of-recovery method may be deemed reasonable, and the Court may consider reducing the award. *Id.*  The lodestar multiplier, however, "need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award." *Id.* at 307. The court is not required to scrutinize every billing record but may instead, rely on summaries submitted by the attorneys. *Id.* at 306-307.  A multiplier of 1 to 4 times is often awarded in fee applications similar to the one herein. "Multiples ranging from one to four are frequently awarded in gross settlement fund cases when the lodestar method is applied." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 341 (quoting Herbert Newberg & Alba Conte, *Newberg on Class Actions,* §14.03 at 14-5 (3d ed. 1992)); *In re Vicuron Pharms, Inc. Sec. Litig.,* 512 F. Supp. 2d 279, 287 (E.D. Pa 2007); *In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491,517 (W.D. Pa. 2003); *In Re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465,489 (S.D.N.Y. 1998)).

Here, the Plaintiffs' Counsel's lodestar to date is $786,154.25. *See* Hepworth Decl. ¶ 23.  Thus, the requested attorneys' fees of $466,666.66, which is less than 1/3 when accounting for the costs incurred by Plaintiffs' counsel, results in a

negative multiplier, making the present fee request eminently reasonable.  To date, Plaintiff's counsel has a negative multiplier equal to approximately 59% of the legal fees incurred to date. Hepworth Decl. ¶ 23, fn. 1.  In sum, Plaintiffs' Counsel's fee request is well within the range of reasonableness, particularly for a case in which the collective's reaction has been so positive.

## III. The Court Should Permit Payment of the Settlement Expenses From the Settlement Fund.

Plaintiffs' Counsel seeks reimbursement for litigation expenses of $17,694.00 from the settlement solely to compensate the TPA in this action, all other expenses included in those associated with the 8 depositions taken in this action, and sending the initial notice advising the putative collective of their ability opt into this action (which amounted to $16,955.65), will be taken out of Plaintiffs' Counsel's fees.

As to Plaintiffs' Counsel's fees and expenses, "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Datatec Sys.,* 2007 WL 4225828, at *9 (quoting *In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 108 (D.N.J. 2001)); *Rent- Way,* 305 F. Supp. 2d at 519 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from

that fund."). As indicated in the Hepworth Decl. ¶ 25, counsels' expenses are monies that counsel has invested at their own expense so as to meet the costs of the litigation.  Those costs are reasonable and will be incurred in administering the settlement.  There is no doubt that those expenses incurred to the benefit of the class are entitled to be reimbursed from that fund. *See also In re Corel Corp. Inc.,* 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003); *In re SmithKline Beckman Corp. Sec. Litig.,* 751 F. Supp. 525, 534 (E.D. Pa. 1990).

As to the TPA's costs and expenses, as detailed in the Keough Decl. ¶ 3, JND has already performed significant tasks to provide notice as directed by the Court. Going forward, the TPA will make settlement payments, determine payroll taxes, and issue W-2 forms to all claimants. Keough Decl. ¶ 3.  JND has estimated that its expenses in handling the notice and administration to completion will be no more than $17,694.00. *Id.* at 3. Based on experience, the parties believe that this amount is reasonable. Hepworth Decl. ¶ 2. JND has and will continue to provide significant benefits to the class and as such expenses have been and continue to be proper and reasonable, the Court should approve the requested expenses.

## IV.   <u>CONCLUSION</u>

For the above reasons, Plaintiffs respectfully requests that the Court sign and enter the accompanying proposed order approving the settlement of this FLSA action.

Date:  December 28, 2018                    Respectfully,
                                           *s/ Marc Hepworth*
                                           Marc Hepworth

                                           David A. Roth
                                           Charles Gershbaum
                                           Rebecca S. Predovan
                                           HEPWORTH GERSHBAUM & ROTH
                                           PLLC
                                           192 Lexington Avenue, Suite 802
                                           New York, New York 10016
                                           Telephone: (212) 545-1199
                                           Facsimile:  (212) 532-3801

                                           *Attorneys for Plaintiffs*